IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LORI D. McLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-CV-318 |
| | ) | |
| WILLIAM P. BARR, in his official | ) | |
| capacity as United States Attorney | ) | |
| General, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Lori McLaughlin alleges her supervisors at the Bureau of Alcohol, Tobacco,

Firearms and Explosives discriminated against her based on her race and her sex, created

a hostile work environment, and retaliated against her, all in violation of Title VII.  She

filed multiple charges of discrimination with the agency and two lawsuits, including this

one.  Because many of her claims are time-barred and the others do not give rise to a

plausible inference of discrimination on the facts alleged, the defendant's motion to

dismiss will be granted.

### Facts and Relevant Procedural History

For the limited purpose of resolving the motion to dismiss for failure to state a

claim, the Court considers the allegations in the complaint as true.  As to dates when

claims were made administratively in connection with the defendant's motion to dismiss

based on exhaustion, the Court accepts the allegations of the complaint, as supplemented

by attachments to the plaintiff's complaints in this case and her previous case, along with other documents related to timing that appear to be undisputed.[1]

Ms. McLaughlin, an African-American woman, has worked for ATF since 1989. Doc. 8 at ¶¶ 3, 23. As is relevant here, she worked as a special agent in the Fayetteville field office and then, starting temporarily in September 2014 and more permanently in July 2015, in the Greensboro field office. *Id.* at ¶¶ 113, 155. In Fayetteville, she was directly supervised by Darren Hampton and in Greensboro, by Jason Walsh. *See id.* at ¶¶ 24, 166. Her second-level supervisor was Debbie Bullock in Fayetteville and Ernie Diaz in Greensboro. *See id.* at ¶¶ 24, 166. While the timing is unclear, Wayne Dixie and C.J. Hyman were also supervisors. *Id.* at ¶¶ 17, 25. Ms. McLaughlin's duties included investigating cases, participating in enforcement operations, working as liaison with local law enforcement, organizing the ATF evidence vault, and assisting U.S. Attorney's Offices with trial preparation. *See id.* at ¶¶ 33, 50, 126, 167.

Ms. McLaughlin has filed multiple charges of discrimination[2] with the agency's Equal Employment Office. As is relevant here, Ms. McLaughlin contacted an EEO

---

[1] Courts generally do not consider matters outside the pleadings when ruling on a motion to dismiss. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). However, a court may consider documents outside the pleadings without converting a motion to dismiss into one for summary judgment if those documents are "integral to and explicitly relied on in the complaint" and their authenticity is unchallenged. *Copeland v. Bieber*, 789 F.3d 484, 490 (4th Cir. 2015). The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

[2] Title VII's federal government employee provision uses both "complaint" and "initial charge" to refer to internal agency proceedings, *see* 42 U.S.C. § 2000e-16, and the regulations use "complaint." *See* 29 C.F.R. § 1614.101 *et seq.* To distinguish between agency and judicial

counsel on July 28, 2014, to assert claims of gender discrimination, retaliation, and a hostile work environment.  *Id.* at ¶ 6.[3]  She filed her first internal charge of discrimination, hereinafter referenced as the "First EEO Charge," with the ATF Equal Employment Office on October 22, 2014, docketed with the agency as No. ATF-2014-00881.  *Id.* at ¶ 7.  The Office dismissed that charge on September 16, 2016.  *Id.* at ¶ 10.  Ms. McLaughlin moved on to the Equal Employment Opportunity Commission, which dismissed the First EEO Charge on May 9, 2017.  *Id.*

On May 23, 2016, while the First EEO Charge was pending, Ms. McLaughlin asked for an EEO counselor to be assigned to look into new allegations of discrimination.  *Id.* at ¶ 12.  She filed her "Second EEO Charge" on August 26, 2016, docketed with the agency as No. ATF-2016-0080.  *Id.* at ¶ 14.

After her First EEO Charge was resolved against her, and with the Second EEO Charge awaiting decision by the agency for nearly a year, Ms. McLaughlin filed suit in federal court on August 16, 2017.  *See* Complaint, Doc. 1, No. 1:17-cv-00759-CCE-JEP (M.D.N.C. Aug. 16, 2017).[4]  The 2017 federal complaint addressed the dismissal of the first EEO charge, No. ATF-2014-00881, and noted the second charge, No. ATF-2016-

---

documents, the Court will refer to internal agency proceedings and documents, whether with the Department of Justice or the EEOC, as "charges," and documents filed to initiate federal lawsuits as "complaints."

[3] Ms. McLaughlin also alleges that she had contacted the EEO counselor "previously" about "the same issues," but she does not provide a date.  Doc. 8 at ¶ 6.  Although the record reflects Ms. McLaughlin has filed previous charges, the Court will refer to the three at issue here as the first, second, and third EEO charges.

[4] For ease of reference, the Court will refer to this as "2017 federal case" when citing to its docket.

0080, had been pending for more than 180 days.  *Id.* (2017 federal case) at ¶¶ 7, 16.  Three weeks later, the DOJ Complaint Adjudication Office dismissed the Second EEO Charge.  Doc. 26-1 (citing 29 C.F.R. § 1614.107(a)(3)).

The Court dismissed the 2017 complaint without prejudice on March 21, 2018, for failure to obtain proper service of process.  Doc. 22 (2017 federal case).  Ms. McLaughlin twice moved for reconsideration, which the Court denied.  Docs. 28, 32 (2017 federal case).  The Court *sua sponte* considered whether to extend the time for service but decided against it because many of her claims were time-barred, she had failed to exhaust her administrative remedies, and many of her allegations were conclusory and did not pass the plausibility test.  Doc. 32 (2017 federal case).  She did not appeal.

On September 20, 2017, while the first federal lawsuit was pending, Ms. McLaughlin contacted an EEO counselor with claims of discrimination, and on November 20, 2017, she filed a third charge of discrimination with ATF, docketed as No. ATF-2017-01114.  Doc. 8 at ¶ 17; Doc. 18-1 at 2.  While the Third EEO Charge was pending, she filed this case on March 21, 2019.  Doc. 1.

The allegations of discrimination in the original 2019 complaint included the same claims of discrimination as in her first lawsuit and ended with events on June 3, 2016, though it includes the status as of August 11, 2017, of certain internal investigations against Ms. McLaughlin.  *See* Doc. 1 at ¶¶ 157–61.  The Third EEO Charge's allegations, which begin with events on April 22, 2017, are thus not contained in the 2019 Complaint as originally filed in this case.  The Department of Justice's Complaint Adjudication Office dismissed the Third EEO Charge on May 14, 2019.  Doc. 8 at ¶¶ 17, 19.  Ms.

4

McLaughlin did not file the charge with the EEOC; instead, she filed an Amended Complaint on August 14, Doc. 8, which added allegations from the Third EEO Charge. The Court accepts the Amended Complaint as the operative complaint in this case.

To summarize, in her Amended Complaint, Ms. McLaughlin raises the same claims of discrimination she raised in the 2017 lawsuit based on the First and Second EEO Charges, along with additional claims raised in the Third EEO Charge. *See id.* at ¶¶ 7, 14, 17. The Amended Complaint omits several paragraphs from the 2017 complaint, but the allegations connected to the First and Second EEO Charges are largely the same.

## Discussion

### I. Legal Framework

#### a. Exhaustion

Federal employees bringing Title VII claims must exhaust administrative remedies within their federal agency before filing in federal court. *See* 29 C.F.R. §§ 1614.105–1614.110; *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019). The applicable regulations first require federal employees to consult an Equal Employment Opportunity counselor within forty-five days of the alleged discriminatory acts. 29 C.F.R. § 1614.105(a)(1). Absent circumstances not present in this case, *see Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 738 (E.D. Va. 2006), failure to do so is grounds for dismissing the employee's Title VII claim or disregarding acts committed before that period. At the conclusion of a counseling period, the employee has fifteen days to file a charge of discrimination with the agency. 29 C.F.R. §§ 1614.105(d), (e), 1614.106(b).

If the charge is dismissed, she may either seek relief from the EEOC—which will then issue a final decision—or, as Ms. McLaughlin did for her Third Charge, she may file suit in federal court based on the EEO Office's determination. The employee must file in federal court within ninety days after receiving a final agency decision, 42 U.S.C. §§ 2000e-16(c), (d), and most courts allow three additional days for the employee to receive the decision in the mail. *See, e.g.*, Fed. R. Civ. P. 6(a) and (d); *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 321 (4th Cir. 2011) (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (citing current Rule 6(d))); *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1124–26 (9th Cir. 2007) (in adopting three-day presumption of receipt, citing current Rule 6(d) and collecting cases).[5]

If no final decision has been issued by the agency 180 days after the charge was filed, the employee may then file a civil action in federal court, *see Stewart*, 912 F.3d at 702, as Ms. McLaughlin did for her Second EEO Charge. The agency must then dismiss the charge that is "the basis of a pending civil action." 29 C.F.R. § 1614.107(a)(3). While not litigated frequently, those courts considering the question have found this dismissal to be a final agency action, subject to the same ninety-day deadline to file in federal court as a dismissal on the merits. *See Threatt v. Jackson*, No. 06 C 3944, 2008 WL 1774986, at *4 (N.D. Ill. Apr. 16, 2008) (citing *Robbins v. Faust*, 41 F.3d 1195, 1198–99 (7th Cir. 1994) (noting this was an issue of first impression)); *DeFrees v. West*,

---

[5] Some courts adopt a five-day timeframe where the agency's decision notice itself states receipt is presumed after five days, and that presumption is reasonable. *See, e.g.*, *Morgan v. Potter*, 489 F.3d 195, 196–97 (5th Cir. 2007). Here, the result does not change if five days is used instead of three days.

988 F. Supp. 1390, 1393–94 (D. Kan. 1997); *see also Lewis v. Leavitt*, No. 1:07CV375, 2008 WL 3413300, at *4 (M.D.N.C. Aug. 8, 2008) (describing dismissal under 29 C.F.R. § 1614.107(a)(3) as a "Final Agency Determination").

If a plaintiff has not exhausted her administrative remedies, her complaint is subject to dismissal when the failure to exhaust is raised by the employer. *See Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851–52 (2019); *Laber v. Harvey*, 438 F.3d 404, 428–29 & n.25 (4th Cir. 2006). It is then the plaintiff's burden to demonstrate "that they have pursued their rights diligently and extraordinary circumstances prevented them from filing on time." *Jordan v. Dep't of the Army*, No. 1:19-cv-349(LMB/IDD), 2019 WL 5566523, at *7–8 (E.D. Va. Oct. 28, 2019) (quoting *Raplee v. United States*, 842 F.3d 328, 333 (4th Cir. 2016)). If equitable tolling does not apply, the plaintiff's late-filed suit will be dismissed. *See Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 653–54 (4th Cir. 1987).

A Title VII federal lawsuit may include "any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the agency." *Stewart*, 912 F.3d at 705–06; *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) (noting the charge's allegations "generally operate to limit the scope of any subsequent judicial complaint"). In other words, the Court may not consider wholly new, unrelated claims or other still-pending EEO charges.

### b. Failure to State a Claim

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[a] complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 583 (4th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint must only give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). "[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, [f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 190 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court construes pleadings from a pro se litigant liberally, but "liberal construction does not absolve Plaintiff from pleading a plausible claim," and "a federal court may not act as an advocate for a self-represented litigant." *Panghat v. Baltimore Veterans Affairs Med. Ctr.*, No. ELH-19-994, 2019 WL 7281952, at *9 (D. Md. Dec. 27, 2019) (citing cases).

## II. Analysis

### a. First and Second EEO Charges

This lawsuit was filed on March 21, 2019, which is well more than ninety days after the EEOC dismissed Ms. McLaughlin's First EEO Charge and well more than ninety days after the DOJ Complaint Adjudication Office dismissed her Second EEO Charge—both of which occurred in 2017. Because she did not timely file suit, her claims based on the alleged acts of discrimination in these two charges are barred.

The Court dismissed Ms. McLaughlin's 2017 federal complaint without prejudice, and Ms. McLaughlin frames her current complaint as re-filing her previous case. *See* Doc. 23 at 5–6. But this dismissal without prejudice did not toll the statute of limitations for the first two EEO charges. *See Broome v. Iron Tiger Logistics, Inc.*, No. 7:17cv444, 2018 WL 3978998, at *2–3 (W.D. Va. Aug. 20, 2018) (collecting cases).

Ms. McLaughlin also asserts her federal court complaint was filed within ninety days after she received the EEOC's decision affirming dismissal of the first EEO charge. Doc. 8 at ¶ 11 (noting actual receipt on May 19, 2017). But this assertion refers to the timing of the filing of her complaint in the previous, dismissed federal case, No. 1:17-cv-759, which is not the initial complaint initiating the present lawsuit.

Next, Ms. McLaughlin contends that equitable tolling should apply. Equitable tolling is "reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee,* 339 F.3d 238, 246 (4th Cir. 2003) (en banc). As is clear from the record of Ms. McLaughlin's first lawsuit, her failure to obtain service of process was not "external." She received multiple reminders from this Court to obtain proper service in her 2017 case, *see* Doc. 32 at 1–4 (2017 federal case), and yet she failed to do so.

Ms. McLaughlin also asserts she received legal advice that she had one year from the date of dismissal to refile the complaint. *See* Doc. 23 at 5–6. First, she does not provide any evidence of this advice other than her own unsupported assertion in her brief, which is insufficient for the Court to apply equitable tolling. *See CVLR Performance*

*Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015) ("litigants face a considerable burden to demonstrate" that equitable tolling applies); *DiPaulo v. Potter*, 733 F. Supp. 2d 666, 673 (M.D.N.C. 2010) (party asserting tolling has "[t]he burden of showing facts to justify" it); *Tudor v. Rushton*, No. 2:06–0342–RBH, 2007 WL 4856866, at *10 (D.S.C. Jan. 30, 2007) (as petitioner "filed no evidence whatsoever," he "failed in his burden to establish his entitlement to equitable tolling").

Second, even if she received this advice it does not matter, for two reasons. Erroneous legal advice does not excuse the plaintiff's noncompliance with this deadline, *Rouse*, 339 F.3d at 248–49 (collecting cases), and North Carolina's state procedural rule, allowing a plaintiff one year from the date of a dismissal without prejudice to refile her current action, does not toll the statute of limitations for federal Title VII claims. *See Birch v. Peters*, 25 F. App'x 122, 123 (4th Cir. 2001); *Crain v. Gaston Cty. Bd. of Educ.*, No. 3:15-CV-00188-GCM, 2015 WL 6449413, at *4 (W.D.N.C. Oct. 23, 2015) (analyzing authorities and collecting cases). Moreover, even if the North Carolina rule could apply in this case, Ms. McLaughlin is not entitled to its protection, since under North Carolina law, "a plaintiff must obtain proper service prior to dismissal in order to toll the statute of limitations for a year." *Camara v. Gbarbera*, 191 N.C. App. 394, 397, 662 S.E.2d 920, 922 (2008); *Latham v. Cherry*, 111 N.C. App. 871, 873, 433 S.E.2d 478, 480 (1993); *Crain*, 2015 WL 6449413, at *4. As noted *supra*, Ms. McLaughlin never obtained proper service in her first federal lawsuit.

Even if her lawsuit were timely as to the discrimination allegations between November 18, 2012, and August 6, 2017, dismissal would still be appropriate. As the

Court noted when denying more time to obtain service, she did not cooperate with the EEO Office's investigations into her discrimination claims, thus failing to exhaust her administrative remedies, and many of her allegations were conclusory and did not state a plausible claim.  Doc. 32 (2017 federal case) at 5–6.

### b. Third EEO Charge

#### i. Timeliness and Exhaustion Issues.

To the extent Ms. McLaughlin's claims in the Amended Complaint are based on allegations of discrimination occurring before August 6, 2017, they must be dismissed. Ms. McLaughlin contacted an EEO counselor on September 20, 2017, *see* Doc. 18-1 at 2, and the applicable regulations require federal employees to consult an EEO counselor within forty-five days of the alleged discriminatory acts.  29 C.F.R. § 1614.105(a)(1). Failure to timely consult the EEO counselor constitutes a failure to exhaust administrative remedies, and when raised by the defendant, it is grounds for dismissing the employee's Title VII claim as to those unexhausted claims.  *See Lorenzo*, 456 F. Supp. 2d at 734–35; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges").  To the extent Ms. McLaughlin asserts that events after her Second EEO Charge, filed on August 26, 2016, through August 5, 2017, constitute acts of discrimination, *see* Doc. 8 at ¶¶ 166–71, those claims are dismissed.[6]

---

[6] The allegations in paragraphs 172–192 of the Amended Complaint correspond to the post-August 5, 2017, claims and are substantively the same as the allegations made in the third EEO charge.  *Compare* Doc. 18-1 at ¶¶ 7–19, pp. 13–14 *with* Doc. 8 at ¶¶ 172–92.  *See Stewart*, 912

To the extent Ms. McLaughlin contends that acts occurring after her Second EEO Charge and before August 6, 2017, are part of a discriminatory hostile work environment, they are not time-barred if one act contributing to the claim occurred within the limitations period, *Morgan*, 536 U.S. at 116–17, and if the pre- and post-limitations period acts have enough in common to be evaluated as part of the same hostile environment. *See id.* at 120. This aspect of her claim is discussed *infra*.

Ms. McLaughlin's Third EEO Charge was administratively dismissed on May 14, 2019. Doc. 8 at ¶ 19. She had ninety days from receipt of that dismissal to file in federal court. *See* 29 C.F.R. § 1614.407. Applying the three-day presumption for receipt, *see* discussion *supra* at 6, she had until August 15 to file suit. She filed the Amended Complaint on August 14, Doc. 8, so her lawsuit was timely filed. To the extent the Amended Complaint asserts discrimination occurring in the forty-five-day period before she initiated EEO counseling for the third time and which discriminatory acts are referenced in the Third EEO Charge, the claims are not time-barred.

### ii. Discrimination Claims

A plaintiff can prove that an adverse employment action was the product of discrimination either by producing direct evidence of discrimination or, where there is no direct evidence, using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to raise an inference of discrimination. *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 780 (D. Md. 2010); *Janey v. N.*

---

F.3d at 705–06 (summarizing Fourth Circuit law requiring plaintiff's federal civil case to bring claims that are "like or related" to the underlying EEO charge).

*Hess Sons, Inc.,* 268 F. Supp. 2d 616, 620–21 (D. Md. 2003) (citing *Karpel v. Inova Health Sys. Servs.,* 134 F.3d 1222, 1227–28 (4th Cir. 1998)). While the pleadings need not "contain specific facts establishing a prima facie case of discrimination" under the *McDonnell Douglas* framework, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), mere conclusions are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 679 (holding that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed); *McCleary-Evans*, 780 F.3d at 586–87 (upholding dismissal where the plaintiff did not allege any facts to support her claim that she was more qualified than other applicants and distinguishing *Swierkiewicz*, where the plaintiff alleged he was passed over for promotion despite twenty-six years of experience compared to the successful candidate's one year), *cert. denied*, 136 S. Ct. 1162 (2016).

Ms. McLaughlin asserts three discrimination claims: disparate treatment, retaliation, and hostile work environment. She does not clearly delineate in the Amended Complaint or explain in her brief which acts by which supervisors and co-workers constitute the basis for each claim. Within the relevant time frame and generally speaking, she alleges that her ATF supervisors required her to perform extra work and to attend non-mandatory trainings, yet chastened her for low productivity; they restricted her from certain work activities, such as helping with a specific robbery investigation or interacting with the U.S. Attorney's Offices; they did not consult her in advance of

scheduling decisions; they gave her an unfair performance evaluation; and she was not selected for a new position.

### 1. Claims of discrimination based on sex or race

The elements of a prima facie case of discrimination are:  "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190.  Here, Ms. McLaughlin does not allege any facts that make plausible her claims of discrimination based on race or sex.  She does not identify any facts that directly support a claim of discrimination, and while she does allege membership in these protected classes, her complaint otherwise is virtually silent as to any other facts supporting an inference of discrimination.

First, she alleges no facts indicating that during the relevant time period she was performing her job satisfactorily.  While she notes a positive work evaluation in October 2013, *see* Doc. 8 at ¶ 46, that is the only good evaluation cited, and it was given several years before the relevant time.  After that evaluation, a private citizen filed a complaint against her in 2014, *see id.* at ¶ 99, and her allegations are replete with indications that through 2017, several managers, supervisors, and co-workers were dissatisfied with her work.  *See, e.g.*, *id.* at ¶¶ 57–61 (performance-related counseling in February 2014), 76– 79 (May 2014 Letter of Expectations requiring increased supervision and daily reporting), 147 (second Letter of Expectations issued in May 2015), 178 (Mr. Diaz lowered plaintiff's overall annual performance rating in 2016), 181 (September 2017

counseling about her failure to report a detention hearing), 192 (2017 performance rating).[7]

Second, she does not allege that white employees were treated differently, either in general or as to particular colleagues.  While she alleges that men were treated differently, *see* Doc. 8 at ¶ 178, she does not identify those men by name or job title, she provides no specific details, and she alleges no facts indicating they were similarly situated to her.  *See Coleman*, 626 F.3d at 191 (affirming dismissal where complaint "fail[ed] to establish a plausible basis for believing [certain colleagues] were actually similarly situated or that race was the true basis for" alleged discriminatory action).

Third, with one potential exception discussed *infra*, the acts mentioned in the Amended Complaint do not rise to the level of adverse employment actions.  An adverse employment action includes failure or refusal to hire, discharge, and other discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment."  42 U.S.C. § 2000e-2(a)(1); *see Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007).  Other actions, such as a new assignment, may also qualify, but "[t]he mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action."  *Holland*, 487 F.3d at 219.  Instead, "some significant detrimental effect" is necessary, such as a "decrease in compensation, job title, level of responsibility, or opportunity for promotion."  *Id.*  Here, her complaints are about things like scheduling her for training without consulting her in advance, Doc. 8

---

[7] Acts pre-dating the filing period may be considered "background evidence in support of a timely claim."  *Morgan*, 536 U.S. at 113.

at ¶ 173; making a false statement about her willingness to be part of a team, *id.* at ¶ 175; and refusing to allow her to respond to an armed robbery call. *Id.* at ¶ 177. These are not adverse employment actions.

The only potential adverse employment action she arguably identifies within the relevant timeframe is that "she was non-selected for a Project Officer in the National Internet Division." *Id.* at ¶ 172. It is not clear whether this would have been a promotion to a different, better position, which would qualify, *see Morgan*, 536 U.S. at 114 (listing "failure to promote" among adverse employment actions), or whether it was simply a partial or full change of duties, which likely would not.

Either way, she has not alleged facts to plausibly assert a discriminatory failure to promote. She alleges no facts to directly indicate that the unidentified person who decided not to offer her the position made that decision based on her race or gender. Nor does she allege any facts to support an inference of discrimination. She does not allege that she was qualified for this position or that a man or a white person was selected for the job. *See McCleary-Evans*, 780 F.3d at 583–84, 586–87 (to satisfy *Iqbal/Twombly* standard, plaintiff must do more than allege her own qualifications and that "non-Black decisionmakers hired non-Black applicants instead of the plaintiff"); *Coleman*, 626 F.3d at 190–91 (affirming dismissal where plaintiff made conclusory allegations with threadbare facts).

Ms. McLaughlin asserts that the EEO Office refused to tell her who was hired for the position during their investigation because of federal personnel laws, Doc. 8 at ¶ 18, thus implicitly contending that the defendant's conduct prevents her from being able to

allege the necessary facts.  But this refusal alone does not plausibly give rise to an inference that a white person or a man received the job she wanted, and she has not identified any other facts that would even arguably support that inference.  Even if the EEO Office's refusal to identify the person who got the position does support the inference that a person outside a protected class got the position, it says nothing about her own qualifications for the job, which as noted *supra* is required and as to which the complaint is silent.

In sum, Ms. McLaughlin has not included facts in the Amended Complaint sufficient to plausibly allege a claim of discrimination during the relevant time frame.

## 2.  Hostile work environment

To state a hostile work environment claim, Ms. McLaughlin must allege that:  (1) she experienced unwelcome harassment; (2) the harassment was based on her sex or race; (3) the harassment "was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere;" and (4) "there is some basis for imposing liability on the employer."  *Bass v. E.I. DuPont de Nemours & Co*., 324 F.3d 761, 765 (4th Cir. 2003).  An employer violates Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Morgan*, 536 U.S. at 116; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 226 (4th Cir. 2016).

Because a hostile work environment claim involves "a series of separate acts that collectively constitute one 'unlawful employment practice,'" the entire time period of the

hostile environment may be considered by the court so long as one act contributing to the claim occurs within the filing period. *Morgan*, 536 U.S. at 116–17 (quoting 42 U.S.C. § 2000e-5(e)(1)). But not all earlier acts automatically fall within a timely hostile environment claim; courts consider whether they "involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Id.* at 120.

As noted *supra*, Ms. McLaughlin began working in the Greensboro office in 2014, where she had different supervisors from those she had previously in the Fayetteville office. *See* Doc. 8 at ¶¶ 166–71. Any actions taken by other managers in Fayetteville some three years before the relevant time frame are not sufficiently connected to be part of the same work environment.[8]

Ms. McLaughlin identifies a myriad of actions by two supervisory agents in Greensboro, Mr. Walsh and Mr. Diaz, which, construing the complaint liberally, appear to form the basis of her hostile work environment claim. Specifically, she alleges that:

- Mr. Walsh and Mr. Diaz did not excuse her from an enforcement operation to visit her aunt in the hospital, *id.* at ¶ 166;

- Mr. Walsh instructed her to report other officers to him for noncompliance with certain ATF Evidence Vault rules, *id.* at ¶ 169; did not assist her in

---

[8] Ms. McLaughlin contends that the Court should consider all acts in her first and third EEO charges, from both the Fayetteville and Greensboro field offices, asserting that C.J. Hyman "gave the 'green light'" for a hostile work environment in both offices. Doc. 23 at 14–15. But her allegations in the complaint about Mr. Hyman's involvement are few and far between and, when they appear, are conclusory. *See* Doc. 8 at ¶¶ 17, 178.

responding to the U.S. Attorney's Office while she was out of town, *id.* at ¶ 170; changed her schedule and changed ATF Evidence Vault guidelines without advance consultation with her, *id.* at ¶¶ 173, 182, 183; "harassed her" about her use of sick leave, then announced a new protocol for requesting it, *id.* at ¶ 174; did not allow her to respond to an armed robbery, *id.* at ¶ 177; counseled her about failure to report a detention hearing, *id.* at ¶ 181; and did not sign a recommendation for prosecution and two reports of investigation that she had submitted, *id.* at ¶¶ 186, 190–91;

- Mr. Walsh related a false, negative statement about her to Mr. Diaz, after which Mr. Diaz took no action, *id.* at ¶¶ 175–76;

- Mr. Diaz counseled her about time management, but assigned her an extra "adoptive" case, refused to remove her from her "collateral position" as Primary Evidence Vault Custodian, and required her to attend non-mandatory ATF training, *id.* at ¶¶ 178–80; he also restricted some of her work activities due to a conflict of interest asserted by the U.S. Attorney's Office, *id.* at ¶¶ 184–85, 187–88;

- Mr. Diaz and Mr. Walsh issued her an unfair 2017 performance evaluation. *Id.* at ¶ 192.

The remaining allegations in the 2019 Amended Complaint about her treatment in Greensboro from 2014 through November 2017 are similar in character and gravity to those listed above. *See id.* at ¶¶ 167–68, 171.

Beyond her own opinions, Ms. McLaughlin does not assert any facts that connect any of these acts with her race or sex. *See Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007) (requiring "but for" connection between alleged discrimination and her protected class). None involved words mentioning gender or race, and there are no other indicators that any of these acts by her supervisors occurred because of her race and gender.

Nor has she provided sufficient facts to support an inference that any alleged harassment was severe or pervasive so as to constitute a hostile work environment. None of the allegations involve physically threatening acts or humiliation, *Morgan*, 536 U.S. at 116, and only a few actions can even arguably be interpreted as interfering with her work performance. *Id.* All of these incidents can fairly be described as routine differences of opinion and personality conflicts with a supervisor, which are not actionable under Title VII. *See Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019). She has not made a plausible hostile work environment claim.

### 3. Retaliation/reprisal for EEO activities

To succeed on a claim of retaliation, the plaintiff must show (1) she engaged in a protected activity, (2) the defendant took a materially adverse action against her, and (3) a causal link between the protected activity and the adverse action. *Id.* at 195. Employees do not have to show an adverse employment action to succeed on a retaliation claim, but they do have to show a "materially adverse action." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–68 (2006). A "materially adverse" action is something that "'might have dissuaded a reasonable worker' from engaging in protected activity."

*Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018) (quoting *Burlington*, 548 U.S. at 68).[9]

Certainly Ms. McLaughlin's repeated use of the EEO charge process and the filing of a federal lawsuit in 2017 raising employment discrimination claims constitute protected activity. *See* 42 U.S.C. § 2000e-3(a); *Kennedy v. McHugh*, No. CCB–13–390, 2013 WL 4541404, at *1–*2 (D. Md. Aug. 23, 2013) (applying this provision in federal employee case). But Ms. McLaughlin has not alleged facts to plausibly show her employer took a materially adverse action against her during the relevant time frame,[10] nor has she alleged facts suggesting a causal relationship between those actions and her protected activity.

As discussed in more detail *supra*, many of the allegedly retaliatory acts are in the category of "those petty slights or minor annoyances that often take place at work and that all employees experience," or "personal conflict[s]," and are thus not cognizable under Title VII. *See Evans*, 936 F.3d at 195 (quoting *Burlington*, 548 U.S. at 68),

---

[9] The anti-retaliation provision is in Title VII's general anti-discrimination provision and is not in Title VII's anti-discrimination provision for federal employees, § 2000e-16, but the Court assumes without deciding that federal employees can bring such a claim. *See Laber*, 438 F.3d at 432 n.30 (noting the Fourth Circuit has "never squarely held" that federal employees have the right to bring a retaliation claim but assuming such a right exists).

[10] In her brief, Ms. McLaughlin spends a great deal of time on allegedly retaliatory actions and protected conduct that occurred after the Third EEO Charge and its investigation, Doc. 23 at 16-20, but these "facts" are not included in the Amended Complaint. Although a court may consider claims that arise after the EEO charge "as long as they are 'like or related' and grow out of the allegations during the pendency of the case before the agency," *Stewart*, 912 F.3d at 705–06, those claims or allegations must be in the federal complaint. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013) (plaintiff cannot amend a complaint with a brief).

*Spencer v. Va. State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019); *see, e.g.*, Doc. 8 at ¶¶ 173–83.  For example, she complains that her supervisor scheduled her for training "without the courtesy of a conversation . . . regarding her work schedule."  Doc. 8 at ¶ 173; *see also id.* at ¶ 182 (another complaint about a scheduling change).

Still other allegations are conclusory.  For instance, she asserts that a supervisor "began harassing" her about her use of sick leave at some point after she complained to that supervisor about disparate treatment, *id.* at ¶ 174, but she does not describe the harassment or provide any objective facts or dates linking it to her protected conduct other than her own opinions about the supervisor's motives.  *Id.*; *see, e.g.*, *id.* at ¶ 182 (conclusory assertion that one supervisor gave another a "green light" to continue harassment and disparate treatment).

During the relevant time period, she alleges she was not selected for a job, *see id.* at ¶ 172, which is arguably a materially adverse action.  But as noted *supra*, she does not even state her own qualifications for that job.  She also has not alleged that the person who decided not to promote her knew of her protected conduct, so that no causal link can be inferred.  *See Blakney v. N.C. A&T State Univ.*, No. 1:17CV874, 2019 WL 1284006, at *20 (M.D.N.C. Mar. 20, 2019) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005)).

Ms. McLaughlin appears to claim that her employer retaliated against her by giving her a low 2017 performance rating.  *See* Doc. 8 at ¶ 192.  But "[a] negative performance review, alone . . . does not constitute a materially adverse action," *Wilson v. City of Chesapeake*, 290 F. Supp. 3d 444, 462 (E.D. Va. 2018), and Ms. McLaughlin

does not allege any further consequences from that review—such as reduction in salary, or stringent requirements placed on her to keep her job—that might dissuade a reasonable worker from protected activity. *Id.* (requiring "evidence suggesting [plaintiff] suffered some loss" due to negative performance evaluation for it to be materially adverse action); *see also Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 429 (4th Cir. 2015) (oral and written reprimands were not adverse employment actions "because they did not lead to further discipline").

Ms. McLaughlin also alleges that her supervisors retaliated against her by imposing a temporary change in her duties. Specifically, she claims that after she filed her first lawsuit she was removed from working directly with all three federal districts in North Carolina and assigned into "a position with the Intelligence group." *See* Doc. 8 at ¶¶ 184–85, 187–89; Doc. 23 at 15–16. But, as noted *supra*, for her reassignment to qualify as a materially adverse action, the plaintiff must show that it "might have 'dissuaded a reasonable worker' from engaging in protected activity." *Strothers*, 895 F.3d at 327 (quoting *Burlington*, 548 U.S. at 68); *Compton v. Maryland*, No. ELH-19-804, 2019 WL 6618659, at *7 (D. Md. Dec. 5, 2019) (at minimum, plaintiff must "demonstrate that the reassignment had some significant detrimental effect" on her) (quoting *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)). Here, Ms. McLaughlin has not addressed how the reassignment might have deterred an employee from continuing to assert their rights, nor has she alleged any detrimental effect on her other than the reassignment itself. Her own allegations make clear that the change in her duties was not initiated by her supervisors but by persons in the U.S. Attorney's Office because

of the conflict of interest caused by the 2017 lawsuit. *See* Doc. 8 at ¶¶ 184–85, 187–89; Doc. 23 at 15–16. Ms. McLaughlin does not state a claim for retaliation.

### iii. Claims of discrimination based on the administrative process

In her complaint, Ms. McLaughlin alleges that that the administrative process resulting from her various EEO charges was full of improprieties, mistakes, and problems. *See* Doc. 8 at ¶¶ 17–19. She expands on these allegations in her briefing. *See, e.g.*, Doc. 23 at 7–9, 13–14. It is not clear whether these allegations concern the investigation and decision-making process related to the Third EEO charge, or another charge. *See* Doc. 8 at ¶ 17 (referencing the Third EEO charge at issue in this case); *id.* at ¶ 19 (referencing a later charge, No. ATF-2018-00998, as "currently pending review by the DOJ/CAO"); Doc. 23 at 7–8 (addressing investigation of that charge). To the extent her Amended Complaint addresses the investigation of her Third EEO Charge, her procedural complaints about the administrative process do not give rise to a cognizable cause of action. Since Title VII provides for an appeal to federal court from and without deference to the final agency decision, any procedural errors by the agency's EEO office will ordinarily have no impact on the de novo district court proceedings and do not give rise to a stand-alone claim. *Nielsen v. Hagel*, 666 F. App'x 225, 231 (4th Cir. 2016); *accord Wriglesworth v. Speer*, No. 5:17-CV-252-D, 2018 WL 1950432, at *3 (E.D.N.C. Apr. 25, 2018).

She also complains in her briefing that her case with the Merit Systems Protection Board was wrongfully dismissed. Doc. 23 at 21. The Amended Complaint does not

address her MSPB case.  As a complaint cannot be amended by a brief, this issue is not before the Court.  *See S. Walk at Broadlands Homeowner's Ass'n*, 713 F.3d at 184–85.

### Conclusion

The complaint makes it clear that Ms. McLaughlin and her supervisors have a history of disagreements and conflicts.  That is not enough to establish a claim for race discrimination or gender discrimination.  She alleges no facts that directly show discrimination—such as racist or sexist comments—nor that raise an inference of discrimination, and her own opinions about her supervisors' motives are insufficient to state a claim.  During the relevant time frame, she largely complains of minor issues that are far from the level of an adverse employment action or a materially adverse action, and as to the one arguable allegation of a failure to promote, she does not allege sufficient facts to plausibly support an inference of discrimination.  Other claims will be dismissed for failure to exhaust her administrative remedies and failure to timely file suit after agency action.

It is **ORDERED** that the defendant's motion to dismiss or in the alternative motion for summary judgment, Doc. 17, is **GRANTED**.

This the 21st day of February, 2020.

UNITED STATES DISTRICT JUDGE